# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM DEFORTE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 2:13-cv-356 |
| | ) |
| THE BOROUGH OF WORTHINGTON; | ) |
| | ) Judge Mark R. Hornak |
| KEVIN FEENEY, individually and as Mayor of the Borough of Worthington; | ) |
| | ) **OPINION** |
| BARRY ROSEN, individually and as a member of Council of the Borough of Worthington and in his capacity as elected constable for the Borough of Worthington and in his capacity as Public Safety Director for the Borough of Worthington; and | ) |
| | ) |
| GERALD RODGERS, individually and as a police officer of the Borough of Worthington; | ) |
| | ) |
| Defendants. | ) |

---

| | |
|---|---|
| EVAN TOWNSEND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 2:13-cv-357 |
| | ) |
| THE BOROUGH OF WORTHINGTON; | ) |
| | ) Judge Mark R. Hornak |
| KEVIN FEENEY, individually and as Mayor of the Borough of Worthington; | ) |
| | ) **OPINION** |
| BARRY ROSEN, individually and as a member of Council of the Borough of Worthington and in his capacity as elected constable for the Borough of Worthington and in his capacity as Public Safety Director for the Borough of Worthington; and | ) |
| | ) |
| GERALD RODGERS, individually and as a police officer of the Borough of Worthington; | ) |
| | ) |
| Defendants. | ) |

**Mark R. Hornak, United States District Judge**

These civil rights lawsuits stem from Plaintiffs William DeForte and Evan Townsend's termination from their respective positions as Chief of Police and Police Officer for the Borough of Worthington, Pennsylvania. Plaintiffs bring suit against (1) the Borough of Worthington; (2) Kevin Keeney, individually and as Mayor of the Borough of Worthington; (3) Barry Rosen, individually and as Councilmember of the Borough of Worthington, in his capacity as elected Constable for the Borough of Worthington, and in his capacity as Public Safety Director for the Borough of Worthington; and (4) Gerald Rodgers, individually and as a Police Officer of the Borough of Worthington.

Pending before the Court are Defendant Gerald Rodgers' Motions to Dismiss for Failure to State a Claim, Dkt. 2:13-cv-356, ECF No. 10 and Dkt. 2:13-cv-357, ECF No. 10; and Defendants Kevin Feeney, Barry Rosen, and the Borough of Worthington's Partial Motions to Dismiss for Failure to State a Claim, Dkt. 2:13-cv-356, ECF No. 12 and Dkt. 2:13-cv-357, ECF No. 12. The Court has considered Plaintiffs' Complaints, Dkt. 2:13-cv-356, ECF No. 1 and Dkt. 2:13-cv-357, ECF No. 1; the pending Motions; and Plaintiffs' Briefs in Opposition, Dkt. 2:13-cv-356, ECF Nos. 21, 22, 23, 24. The matter is ripe for disposition, and for the reasons that follow, Defendant Gerald Rodgers' Motions to Dismiss are granted in their entirety, and Defendants Kevin Feeney, Barry Rosen, and the Borough of Worthington's Partial Motions to Dismiss are granted in part and denied in part.

## I. BACKGROUND

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations in the Complaints as true and draw all reasonable inferences in Plaintiffs' favor. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Therefore, for the purpose of the disposition of Defendants' Motions, the essential facts are as follows.

### a. **Plaintiff William DeForte**

Plaintiff William DeForte ("Mr. DeForte") was hired as a member of the Worthington Borough Police on or about July 23, 2009. Compl. ¶ 11, Dkt. 2:13-cv-356, ECF No. 1. Mr. DeForte was promoted to the position of Assistant Chief on or around September 8, 2009, and was subsequently promoted to the position of Chief of Police on March 9, 2010. *Id.* at ¶¶ 12-13. According to the Minutes of the November 5, 2012 Borough Council Meeting, Mr. DeForte was suspended from his duties as Chief of Police on October 26, 2012 "for insubordination and other possible offenses." *Id.* at ¶ 14. On November 5, 2012, Mr. DeForte was terminated from his position as Chief of Police. *Id.* at ¶ 15. During his tenure with the Borough of Worthington, Mr. DeForte had an exemplary record with no prior disciplinary events. *Id.* at ¶ 18. However, Mr. DeForte often clashed with Councilmember Rosen and Mayor Feeney over issues pertaining to the operation of the police department, *id.* at ¶ 19, ranging from Councilmember Rosen's alleged unlawful use of police powers when acting in his capacity as Constable, to Mayor Feeney's alleged use of a police emergency equipment grant to repair traffic lights in and out of Worthington Borough, to Mayor Feeney's alleged illegal seizure of keys from a riding lawnmower that belonged to a Worthington Borough resident, *id.* at ¶¶ 22, 26, 32, 34. Mr. DeForte also repeatedly advised Councilmember Rosen and Mayor Feeney that it was unlawful for a traffic citation quota to be imposed on the officers. *Id.* at ¶ 20. On October 24, 2010, Mr. DeForte confronted Mayor Feeney about Mayor Feeney's alleged theft of five (5) radios from the Worthington West Franklin Fire Department. *Id.* at ¶¶ 26-27. On October 26, 2010, Mayor Feeney allegedly removed a computer and hard drive from the police department. *Id.* at ¶ 36. After Mr. DeForte attempted to contact Mayor Feeney about the removal of the equipment, and

after Councilmember Rosen denied knowing the equipment was removed, Mayor Feeney ultimately acknowledged that he took the computer. *Id.* at ¶¶ 37, 38, 43. Mayor Feeney then threatened to report Mr. DeForte to the ATF on a firearm issue. *Id.* at ¶ 44. That same day, Mayor Feeney told Mr. DeForte that Mr. DeForte was suspended. *Id.* at ¶ 45.

On October 28, 2012, Mayor Feeney contacted Mr. DeForte and threatened to press charges against him for theft. *Id.* at ¶ 50. Sometime thereafter, Defendant Officer Rodgers asked Mr. DeForte about an upper half of a gun that Mr. DeForte built for him. *Id.* at ¶ 53. Mr. DeForte had sold the upper half to Officer Rodgers. *Id.* at ¶ 54. Officer Rodgers made an allegation that Mr. DeForte improperly sold Officer Rodgers a gun that belonged to the Borough of Worthington. *Id.* at ¶ 55. Mr. DeForte later learned that following his October 26, 2010 suspension, someone with access to the Worthington Police Department may have switched the "upper" on Officer Rodgers' gun with the "upper" on a gun issued to another patrol officer, and that patrol officer's gun was now missing. *Id.* at ¶ 57.

On October 30, 2012, Mr. DeForte was contacted by the Solicitor of Pine Township (where he had been recently hired as a police officer) and was advised that Pine Township was disbanding its police force. *Id.* at ¶ 60. Mr. DeForte had worked with Pine Township for approximately one month to put the force together, and October 31, 2012 was going to be the first day with active patrol officers. *Id.* at ¶ 61. Mr. DeForte learned that on October 30, 2012, Mayor Feeney removed certain belongings from the Pine Township Police Department. *Id.* at ¶ 62. Mayor Feeney apparently advised both Pine Township and the State Police that there was stolen property at the Pine Township Police Department belonging to the Borough of Worthington. *Id.* at ¶ 63. On or about November 5, 2012,[1] the Borough of Worthington

---

[1] Mr. DeForte's Complaint lists the year of his termination as 2013, but when the Complaint is read in context, the correct year of his termination appears to be 2012.

terminated Mr. DeForte for what Mayor Feeney alleged was "insubordination or other possible offenses." *Id.* at ¶ 65.

On March 11, 2013, Mr. DeForte filed suit in this Court against Defendants, alleging in Count I against Worthington Borough "Violation of Plaintiff's Right to Procedural Due Process, 42 U.S.C. § 1983"; in Count II against all individual Defendants in their official and individual capacities, "Conspiracy to Violate the Plaintiff's Right to Procedural Due Process/Violation of Borough Code"; in Count III against Worthington Borough, "Pennsylvania Whistleblower Law"; and in Count IV against all Defendants in their official and individual capacities, "Tortious Interference with Business Relations."

### b. Plaintiff Evan Townsend

Plaintiff Evan Townsend ("Mr. Townsend") was hired by the Worthington Borough Police Department on January 3, 2011. Pl.'s Compl. ¶ 14, Dkt. 2:13-cv-357, ECF No. 1. On November 5, 2012, Mr. Townsend was terminated from his position as Patrol Officer. *Id.* at ¶ 16. Mr. Townsend was provided no prior notice that termination was a possibility at the November 5, 2012 meeting, and was not given a statement of charges or an opportunity to be heard. *Id.* at ¶ 17. During his tenure with the Borough, except for a previous termination for writing an insufficient number of traffic citations, Mr. Townsend had an exemplary record with no prior disciplinary events. *Id.* at ¶¶ 18, 19. Mr. Townsend often clashed with Councilmember Rosen and Mayor Feeney over issues pertaining to the operation of the police department. *Id.* at ¶ 20. Like Mr. DeForte, Mr. Townsend advised Councilmember Rosen and Mayor Feeney that it was unlawful for a traffic citation quota to be imposed on the officers. *Id.* at ¶ 21. Mr. Townsend reported to then-acting Chief of Police Mr. DeForte, Mayor Feeney's alleged theft of radios from the Worthington Fire Department. *Id.* at ¶¶ 23, 24. On November 5, 2012, Mr. Townsend was fired. *Id.* at ¶ 25.

On October 30, 2012, Mr. Townsend was contacted by the Solicitor of Pine Township (where he too had been recently hired as a police officer) and was advised that Pine Township was disbanding its police force. *Id.* at ¶ 30. Like Mr. DeForte, Mr. Townsend learned that on October 30, 2012, Mayor Feeney removed certain belongings from the Pine Township Police Department. *Id.* at ¶ 32. Mayor Feeney apparently advised both Pine Township and the State Police that there was stolen property belonging to the Borough of Worthington at the Pine Township Police Department. *Id.* at ¶ 33.

On March 11, 2013, Mr. Townsend filed suit in this Court against Defendants, alleging in Count I against Worthington Borough "Violation of Plaintiff's Right to Procedural Due Process, 42 U.S.C. § 1983"; in Count II against all individual Defendants in their official and individual capacities, "Conspiracy to Violate the Plaintiff's Right to Procedural Due Process/Violation of Borough Code"; in Count III against Worthington Borough, "Pennsylvania Whistleblower Law"; and in Count IV against all Defendants in their official and individual capacities, "Tortious Interference with Business Relations." On July 12, 2013, this Court granted the parties' Consent Motion to Relate Cases, such that Mr. DeForte's case, Dkt. 2:13-cv-356, and Mr. Townsend's case, Dkt. 2:13-cv-357, were consolidated for all pre-trial proceedings. Jul. 18, 2013 Order, Dkt. 2:13-cv-356, ECF No. 20.[2]

## II. DISCUSSION

### a. Standard of Review

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The District Court must accept the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578

---

[2] The parties' briefs, with respect to Mr. DeForte and Mr. Townsend's claims, are identical in all material aspects.

6

F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In short, a motion to dismiss should be granted if a party does not allege facts that could, if established at trial, entitle him to relief. *See Fowler*, 578 F.3d at 211.

### b. Defendant Rodgers' Motion to Dismiss Counts II and IV of Plaintiffs' Complaints

Plaintiffs have agreed to withdraw their claim of tortious interference with business relations as to Defendant Rodgers (Count IV). *See* Pl.'s Br. in Opp'n to Mot. to Dismiss at 5, Dkt. 2:13-cv-356, ECF Nos. 22, 24. Therefore, as to Defendant Rodgers, only Count II remains. Count II alleges against "all individual Defendants in their official and individual capacities" a "Conspiracy to Violate the Plaintiff's Right to Procedural Due Process/Violation of Borough Code."

In order to defeat a defendant's motion to dismiss a conspiracy claim, a plaintiff must set forth in his or her complaint some factual basis to support the elements of a conspiracy, which are (1) an actual agreement among the co-conspirators or "meeting of the minds" and (2) concerted action. *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008) (internal citation omitted); *Capograsso v. The Supreme Court of N.J.*, 588 F.3d 180, 184-85 (3d Cir. 2009); *see also Goodson v. Maggi*, 797 F. Supp. 2d 624, 639 (W.D. Pa. 2011) ("Plaintiff must set forth specific factual allegations that demonstrate collusion or concerted action among the alleged conspirators.").

Here, Plaintiffs' only allegations about any "meeting of the minds" between the individual Defendants are that (1) "the individual defendants unlawfully conspired to violate [Plaintiffs'] constitutional rights to procedural due process of law"; (2) "the defendants acted in

7

concert and under the color of state law"; (3) "Officer Rodgers is liable for encouraging, aiding, abetting, and conspiring with the other defendants and is liable because he unlawfully conspired with state actors and acted under color of state law"; and (4) "Officer Rodgers conspired with Mayor Feeney and the other Defendants in the switching of uppers from another patrol officer's weapon with the upper sold to Officer Rodgers from Chief DeForte prior to turning that weapon over to the State Police." Dkt. 2:13-cv-356, ECF No. 1, Pl.'s Compl. ¶¶ 74, 80, 82, 84, 85; Dkt. 2:13-357, ECF No. 1, Pl.'s Compl. ¶¶ 42, 46, 47, 49.

The first three of these allegations set forth only legal conclusions and are therefore insufficient, separately or together, to state a claim for conspiracy to deprive Plaintiffs of their constitutional rights. The fourth allegation is the only allegation containing any factual averment, and at best alleges a conspiracy to switch out parts of a gun and not a conspiracy to deprive Plaintiffs' of their procedural due process rights by firing them without a pre-termination or post-termination hearing. Plaintiffs' conspiracy allegations as to Defendant Rodgers, as well as to the other individual Defendants named in Count II, fall far short of factually suggesting any "meeting of the minds" between the individual Defendants to deprive Plaintiffs of their constitutional rights.

In Plaintiffs' Briefs in Opposition to Defendant Rodgers' Motion to Dismiss Plaintiffs' § 1983 conspiracy claim, Plaintiffs discuss additional facts not plead in their Complaints, stating that "[t]o the extent that this Court believes that the facts as pled are insufficient, Plaintiff should have the right to amend the Complaint to include the recently discovered facts." Pl.'s Br. in Opp'n to Mot. to Dismiss at 5, Dkt. 2:13-cv-356, ECF Nos. 22, 24. Plaintiffs' additional facts are that (1) "Defendant Rodgers attended and participated in the illegal executive sessions where Plaintiff's termination was discussed and planned out"; *id.*, and (2) "Rodgers continues to make statements within the community which he knows to be false that Plaintiff forged Mayor

Feeney's signature to documents regarding ownership of certain guns that were used in the Department," Dkt. 2:13-cv-356, ECF No. 22, Pl.'s Br. in Opp'n to Mot. to Dismiss at 5.

In civil rights cases, "district courts must offer amendment – irrespective of whether it is requested – when dismissing a case for failure to state a claim[,] unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). Apart from the reality that Plaintiffs could have amended their Complaints without leave of Court when the Motions to Dismiss were filed, Fed. R. Civ. P. 15(a)(1)(B), the additional facts lobbed into the case in Plaintiffs' response briefs do not go any further than Plaintiffs' Complaints towards plausibly alleging an actual agreement or "meeting of the minds" among the individual Defendants to deprive Plaintiffs of procedural due process by firing them without a pre-termination or post-termination hearing. Therefore, because such an amendment of Plaintiffs' Complaints to include those additional facts would be futile, Plaintiffs' request to amend their § 1983 conspiracy claim is denied, and Defendants' Motions to Dismiss this claim at Count II as to all individual Defendants are granted with prejudice.[3]

    c. **Worthington Borough, Kevin Feeney, and Barry Rosen's Partial Motion to Dismiss Plaintiffs' Complaint**

    1. **Count I**

The remaining Defendants move to dismiss Counts I, II, III, and IV of Plaintiffs' Complaints. Count I of Plaintiffs' Complaints alleges against Defendant Worthington Borough "Violation of Plaintiff's Right to Procedural Due Process, 42 U.S.C. § 1983." Worthington Borough "do[es] not move for dismissal on the issue of purported violations of Plaintiff[s'] procedural due process rights as to [their] pre-termination hearing." Defs.' Mem. of Law in Supp. of Mot. to Dismiss at 6, Dkt. 2:13-cv-356, ECF No. 13; Dkt. 2:13-cv-357, ECF No. 13.

---

[3] This also results in the only claim remaining as to Defendant Rodgers being dismissed, removing him from the case.

9

Rather, Worthington Borough moves to dismiss "all procedural due process claims relating to the purported failures regarding post-termination proceedings." *Id.* at 6.

In order to "state a claim of liability under § 1983, [a plaintiff] must allege that [he] was deprived of a federal constitutional or statutory right by a state actor." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005). Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States of any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983 does not create rights; it simply provides a remedy for violation of those rights created by the United States Constitution or federal law. *Kniepp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). The Due Process Clause of the Fourteenth Amendment sets forth that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

To establish a procedural due process claim, a plaintiff must demonstrate that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life liberty or property, and (2) the procedures available to him did not provide due process of law." *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 219 (3d Cir. 2009). Property interests within the Fourteenth Amendment are defined by such sources as state law rules or understandings. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). As is relevant here, under Pennsylvania law, a person employed "in any police or fire force" cannot be "suspended, removed, or reduced in rank" absent one of six statutory reasons. 53 Pa. Cons. Stat. Ann. § 46190. "There can be no dispute that 53 Pa. Stat. § 46190 creates . . . a property

interest triggering the protections of the Fourteenth Amendment. As the Supreme Court recognized in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982), "[t]he hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Dee v. Borough of Dunmore*, 549 F.3d 225, 230 (3d Cir. 2008).

Indeed, Defendant Worthington Borough "do[es] not dispute that Plaintiff[s] had a legitimate property right in [their] continued employment." Defs.' Mem. of Law in Supp. of Mot. to Dismiss at 6. Rather, Defendant Worthington Borough avers that Plaintiffs failed to allege that they availed themselves of the opportunity to be heard after receiving notice of their termination. *Id.* at 7. Specifically, the Borough avers that Plaintiffs failed to submit a written request for a hearing within ten (10) days of receiving notice of their termination, pursuant to 53 Pa. Cons. Stat. Ann. § 46190. *Id.*

The Supreme Court has "described the 'root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (internal citation and quotation omitted). In the context of a constitutionally-protected property interest in continued employment, "all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures as provided by the [state] statutes." *Id.* at 547-48.

There is no general exhaustion requirement for a claim under 42 U.S.C. § 1983. *See Patsy v. Board of Regents of State of Florida*, 457 U.S. 496, 516 (1982). However, where a plaintiff, as here, brings a claim for violation of the right to procedural due process, the plaintiff "must have taken advantage of the processes that were available, unless those processes were patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

11

The Worthington Borough avers that Plaintiffs failed to submit a written request for a hearing within ten (10) days of receiving notice of their termination, pursuant to 53 Pa. Cons. Stat. Ann. § 46190. Section 46190 requires that

> A written statement of any charges made against any person so employed shall be furnished to the person within five days after the same are filed. The person so employed shall have ten days from the date of receiving the notice in which to submit a written request for a hearing to the civil service commission under section [46191 - "Hearings on Dismissals and Reductions"].

53 Pa. Cons. Stat. Ann. § 46190. Under the plain language of § 46190, the requirement that the employee submit a written request for a hearing is triggered only when "[a] written statement of any charges made against [the employee is] furnished to the [employee] within five days after the same are filed." *Id.* There is no indication in the parties' pleadings or briefs that Defendant Worthington Borough ever filed or issued written statements of any charges against Plaintiffs. Thus, at this motion to dismiss stage, Defendant Worthington Borough's argument based on this statutory provision is unavailing. Plaintiffs have sufficiently and plausibly pled a violation of their rights to procedural due process. Defendant Borough of Worthington's Partial Motions to Dismiss Plaintiffs' post-termination procedural due process claim at Count I are therefore denied as to both Plaintiffs.

### 2. Count III[4]

Count III of Plaintiffs' Complaints alleges against Defendant Worthington Borough "[Violation of the] Pennsylvania Whistleblower Law." Under the Pennsylvania Whistleblower Law,

> No employer may discharge, threaten, or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, locations or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or

---

[4] Note that Count II as to the individual Defendants Feeney and Rosen is dismissed, as discussed in Section II(b), *supra.*

12

in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

43 Pa. Cons. Stat. Ann. § 1423(a). "Wrongdoing" is defined as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." 43 Pa. Cons. Stat. Ann. § 1422. *See Golaschevsky v. Dep't of Environmental Protection*, 720 A.2d 757, 759 (Pa. 1998). "Good faith report," in turn, is defined as "[a] report of conduct defined in this act as wrongdoing or waste which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true." *Id.*

The facts alleged in Plaintiffs' Whistleblower Law claim are that (1) each Plaintiff "was discharged by the defendants in retaliation for making good faith reports of wrongdoing that he was required to make by law"; (2) on numerous occasions, each Plaintiff "reported to Worthington Borough officials the unlawful nature of Worthington's demand for its officers to write sufficient traffic tickets in order to pay for officer salaries, police equipment, and vehicles," Dkt. 2:13-cv-357, ECF No. 1, Pl.'s Compl. ¶¶ 56, 57; and (3) Plaintiff Mr. DeForte "was suspended just two days after confronting Mayor Feeney regarding his theft of radios from the fire company at which time, [Plaintiff] complained again regarding Worthington's unlawful ticketing practices," Dkt. 2:13-cv-356, ECF No. 1, Pl.'s Compl. ¶¶ 93, 94, 96.

Defendants argue that Plaintiffs failed to report in good faith any instances of "wrongdoing" as defined under the statute because Plaintiffs' "references to areas of alleged wrongdoing are at best, minor or technical violations, insufficient to support a report of wrongdoing." Dkt. 2:23-cv-356, ECF No. 13, Defs.' Mem. in Supp. of Mot. to Dismiss at 13; *see* Dkt. 2:13-cv-357, ECF No. 13, Defs.' Mem. in Supp. of Mot. to Dismiss at 11. However, for

13

example, unlike the plaintiff in *Ross v. Borough of Dormont*, 937 F. Supp. 2d 638, 653 (W.D. Pa. 2013), who unsuccessfully asserted that a borough manager entering the police department once through the "Police Only" entrance was a "wrongdoing" contemplated under the Pennsylvania Whistleblower Law, here, Plaintiffs' allegations that they were terminated in retaliation for their reports of wrongdoing in the form of unlawful ticket quotas and theft of significant public property are neither "minor" nor "technical" and are sufficient to support a claim under the Pennsylvania Whistleblower Law. *See Rankin v. City of Philadelphia*, 963 F. Supp. 463, 470 (E.D. Pa. 1997) ("the Whistleblower Law is designed to help promote efficient and ethical government by assuring employees that they will not lose their jobs (or otherwise suffer) when they report inefficient unethical, or illegal government practices"). Therefore, Defendant Borough of Worthington's Motions to Dismiss Count III of Plaintiffs' Complaints are denied.

### 3. Count IV

Count IV of Plaintiffs' Complaints alleges "Tortious Interference with Business Relations" against "All Defendants in their Official and Individual Capacities." Plaintiffs have withdrawn their claim of tortious interference as to the Borough of Worthington. Dkt. 2:13-cv-356, ECF No. 21, Pl.'s Br. in Opp'n to Mot. to Dismiss at 11; Dkt. 2:13-cv-356, ECF No. 23, Pl.'s Br. in Opp'n to Mot. to Dismiss at 10.

As to Plaintiffs' tortious interference claims against Defendants Feeney and Rosen in their official capacities, 42 Pa. Cons. Stat. Ann. § 8546 provides in pertinent part that

> In any action brought against an employee of a local agency for damages on account of an injury to a person or property based upon *claims arising from, or reasonably related to, the office or the performance of the duties of the employee*, the employee may assert on his own behalf: . . . [t]he defense that the act of the employee which gave rise to the claim was within the policymaking discretion granted to the employee by law. For purposes of this subsection, *all acts of members of the governing body of a local agency or of the chief executive officer thereof are deemed to be within the policymaking discretion granted to such person by law*.

14

42 Pa. Cons. Stat. Ann. § 8546 (emphasis added). Mayor Feeney and Borough Councilmember Rosen, in their official capacities as Mayor and Councilmember, respectively, are shielded by official immunity under 42 Pa. Cons. Stat. Ann. § 8546. *See Edmondson v. Zetusky*, 674 A.2d 760, 766-67 (Pa. Commw. Ct. 1996) ("[T]he Mayor, as Chief Executive Officer of the City of Chester, is granted immunity for all acts taken as Mayor, as any and all acts by the chief executive officer are deemed to be within the policy making discretion granted to them by law."); *City of Philadelphia v. Glim*, 613 A.2d 613, 617 (Pa. Commw. Ct. 1992) (Section 8546 "enable[s] local agency employees to assert the defense of official immunity for their actions performed in the scope of their office or duties."); *see* 53 Pa. Cons. Stat. Ann. § 46123.1 (a borough mayor has full charge and control of the borough chief of police and the borough police force); 53 Pa. Cons. Stat. Ann. § 46005 (setting forth the governing powers of a borough council). Thus, the Court grants the Defendants' Motions as to Plaintiffs' tortious interference claims against Defendants Feeney and Rosen in their official capacities.

As for Plaintiff's tortious interference claims against Defendants Feeney and Rosen in their individual capacities, 42 Pa. Cons. Stat. Ann. § 8550 allows for personal capacity suits against Borough employees who commit "willful misconduct." Section 8550 sets forth that "[i]n any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct," the defense of official immunity does not apply. 42 Pa. Cons. Stat. Ann. § 8550. The Pennsylvania Supreme Court has explained that "the term 'willful misconduct' is synonymous with the term 'intentional tort.'" *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006) (quoting *Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289, 293 (Pa. 1994). Thus, Plaintiffs' allegation that Mayor Feeney and Councilmember Rosen committed willful misconduct in the

form of the intentional tort of tortious interference with contractual relations revokes their official immunity under § 8550, such that suit against them in their individual capacities may proceed.

To set forth a legally-sufficient cause of action for intentional interference with contractual relations, four elements must be pled:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party:
> (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;
> (3) the absence of privilege or justification on the part of the defendant; and
> (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*Pawlowski v. Smorto*, 588 A.2d 36, 39-40 (Pa. Super. Ct. 1991). Plaintiffs' relevant allegations of such tortious interference are that (1) "on October 30, 2012, [Plaintiffs were] contacted by the Solicitor [of] Pine Township where [they] had also been recently hired, . . . and advised that Pine Township was disbanding the force"; (2) "Mayor Feeney apparently advised both Pine Township and the State Police that there was stolen property that belonged to the Borough of Worthington at the Pine Township Police Department"; (3) Defendants tort[i]ously interfered with [Plaintiffs'] business relations in Pine Township which caused Pine Township to disband its police force"; and (4) "but for Defendants' interference with Pine Township, the police force would not have been disbanded." Dkt. 2:13-cv-356, ECF No. 1, Pl.'s Compl. ¶¶ 60, 63, 99, 100; Dkt. 2:13-cv-357, ECF No. 1, Pl.'s Compl. ¶¶ 30, 33, 62, 63.

The former two factual allegations, which only pertain to Mayor Feeney, taken together with the latter two conclusory allegations at best only establish the first element of a legally-sufficient cause of action for intentional interference with contractual relations - that Plaintiffs had an existing employment relationship with the Pine Township Police Department. Accepting Plaintiffs' pleaded facts as true and disregarding Plaintiffs' legal conclusions enumerated in

16

Count IV, Plaintiffs' threadbare tortious interference allegations are insufficient to state a cause of action. *See Fowler*, 578 F.3d at 210; *Iqbal*, 556 U.S. at 678 ("threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

Plaintiffs have neither sought leave to amend Count IV of their Complaints, pursuant to Fed. R. Civ. P. 15(a), nor discussed amendment via additional facts in their Briefs in Opposition to Defendants' Motions to Dismiss. Because under these circumstances the Court cannot determine whether amending Count IV of Plaintiffs' civil rights Complaints would be "futile" under *Fletcher-Harlee Corp.*, 482 F.3d at 251, Defendants' Motion to Dismiss as to Count IV is granted without prejudice, and Plaintiffs are granted leave to amend Count IV of their Complaints within 21 days of the date of the Court's Order on Defendants' Motions to Dismiss discussed herein.

### d.  **Punitive Damages**

Defendants also move to dismiss Plaintiffs' punitive damages claim. Count I - "Violation of Plaintiff's Right to Procedural Due Process, 42 U.S.C. § 1983," alleged against the Borough of Worthington, is the only Count remaining in which Plaintiffs have asserted a claim for punitive damages. In Plaintiffs' Briefs in Opposition to Defendants' Motions to Dismiss Plaintiffs' punitive damages claims, Plaintiffs discuss additional facts not plead in their Complaints, stating that "[t]o the extent that this Court believes these additional facts are necessary to preserve the claim, Plaintiff[s] request[] the opportunity to amend the pleading." Pl.'s Br. in Opp'n to Mot. to Dismiss at 13, ECF Nos. 21, 23. As discussed above, in civil rights cases, "district courts must offer amendment – irrespective of whether it is requested – when dismissing a case for failure to state a claim[,] unless doing so would be inequitable or futile." *Fletcher-Harlee Corp.*, 482 F.3d at 251.

It is well established that a municipality, such as the Borough of Worthington, may not be held liable for punitive damages. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981). Because a borough cannot be held liable for punitive damages, amendment of Plaintiffs' punitive damages claim against the Borough of Worthington to include such additional facts would be futile. Therefore, Plaintiffs' request to amend their punitive damages claim is denied, and Plaintiffs' § 1983 punitive damages claim against the Borough of Worthington is dismissed. *See Schor v. N. Braddock Borough*, 801 F. Supp. 2d 369, 381 (W.D. Pa. 2011).

### III. CONCLUSION

For the foregoing reasons, Defendant Gerald Rodgers' Motions to Dismiss are granted in their entirety as to Count II, and Defendants Kevin Feeney, Barry Rosen, and the Borough of Worthington's Partial Motions to Dismiss are granted as to Count II and Count IV, and denied as to Count I and Count III. The claims for punitive damages as to The Borough of Worthington are dismissed with prejudice. Count II of Plaintiffs' Complaints is dismissed with prejudice, Count IV of Plaintiffs' Complaints is dismissed without prejudice, and Plaintiffs are granted leave to amend Count IV of their Complaints within 21 days of the date of the Court's Order.

The remaining Counts in Plaintiffs' Complaints remain as follows: Count I against Worthington Borough - "Violation of Plaintiff's Right to Procedural Due Process, 42 U.S.C. § 1983"; and Count III against Worthington Borough - "[Violation of] Pennsylvania Whistleblower Law." An appropriate Order will follow.

Mark R. Hornak
United States District Judge

Dated: December 18, 2013
cc: All counsel of record