IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EVAN TOWNSEND, | Consolidated at 2:13-cv-356 |
| Plaintiff, | |
| Vs | Civil Action No. 2:13 cv 357 |
| THE BOROUGH OF WORTHINGTON; | |
| KEVIN FEENEY, Individually and as Mayor of the Borough of Worthington; | |
| BARRY ROSEN, Individually and as a member of Council of the Borough of Worthington and in his capacity as an elected constable for the Borough of Worthington; and | |
| GERALD RODGERS, Individually and a Police Officer of the Borough of Worthington | |
| Defendants | |

## SECOND AMENDED COMPLAINT

**AND NOW COMES THE PLAINTIFF, EVAN TOWNSEND**, by and through his attorneys, Craig H. Alexander and Bruce E. Dice & Associates, P.C. and hereby amends Plaintiff's Complaint as follows:

## JURISDICTION

1. This is an action for money damages brought pursuant to 42 U.S.C. §§1983, 1986 and 1988 in the Fourth and Fourteenth Amendment to the United States Constitution.

2. This is an action for money damages brought pursuant to 42 U.S.C. §§1983, 1986 and 1988 in the Fourth and Fourteenth Amendment to the United States Constitution

JURY TRIAL DEMANDED

3. The jurisdiction of this court is predicated on 28 U.S.C. §§1331, 1342(a)(3), 1343(1)(2)(3)(4) as well as the foregoing statutory and constitutional provisions together with supplemental jurisdiction of this court under 28 U.S.C. §1367(a).

4. This is an action for money damages brought pursuant to 42 U.S.C. §§1983, 1986 and 1988 in the Fourth and Fourteenth Amendment to the United States Constitution.

## PARTIES

5. Plaintiff, EVAN TOWNSEND, (Hereinafter sometimes referred to as Officer Townsend) is an adult individual with an address of 1748 Harcor Drive, Pittsburgh, PA 15226.

6. The Defendant, THE BOROUGH OF WORTHINGTON, (hereinafter sometimes referred to as Worthington, Worthington Borough or the Borough of Worthington) is a Pennsylvania Borough and Body Politic organized under and subject to the Pennsylvania Borough Code.

7. Worthington has an office and principal place of business with a address of 206 Church Street, PO Box 66, Worthington, PA 16262.

8. The Defendant KEVIN FEENEY (hereinafter referred to as "Mayor Feeney" is an individual and Mayor of the Worthington Borough.

9. The Defendant BARRY ROSEN (hereinafter referred to as "Councilperson Rosen") is individual and member of Council of Worthington Borough.

10. Councilperson Rosen is also an elected Constable in the Borough of Worthington.

JURY TRIAL DEMANDED

11. Councilperson Rosen is also the public safety director for the Borough or Worthington.

12. The Defendant GERALD RODGERS (hereinafter referred to as "Officer Rodgers" is an individual and current Chief of Police of Worthington Borough.

## BACKGROUND

13. Officer Townsend is a 42 year old adult individual who, at all times pertinent herein was a patrol officer or deposed patrol officer of Worthington Borough.

14. Officer Townsend was hired on the 3rd day of January, 2011.

15. Officer Townsend was initially terminated on July 12, 201 for writing an insufficient amount of traffic citations, but subsequently rehired approximately two (2) months later.

16. On November 5, 2012, Officer Townsend was again terminated from his position as patrol officer for the Borough of Worthington.

17. Officer Townsend was provided no prior notice that termination was a possibility at the November 5, 2012 meeting was not given a statement of charges nor an opportunity to be heard.

18. During his tenure with Worthington Borough, despite being terminated previously, Officer Townsend had an exemplary record with no prior disciplinary events.

19. Officer Townsend was told that his prior termination was due to writing an insufficient number of traffic citations.

20. Officer Townsend often clashed with both Council Member Rosen and Mayor Feeney over issues pertaining to the operation of the Police Department.

JURY TRIAL DEMANDED

21. Specifically, Officer Townsend advised Council Member Rosen and Mayor Feeney that it is unlawful for a quota system to be imposed upon the officers for the writing of traffic citations.

22. Both Mayor Feeney and Council Person Rosen were often overheard telling the rank and file of the police department that they had to earn their salary through ticket writing and if they wanted a new cruiser, they had to write enough tickets to purchase one.

23. Additionally, Officer Townsend became aware that Mayor Feeney had removed radios from the Worthington Fire Department without authorization.

24. Officer Townsend brought the theft of the radios to the attention of Chief of Police William DeForte who thereafter confronted Mayor Feeney.

25. Two days later, Chief DeForte was suspended and on November 5, 2012, both Chief DeForte and Officer Townsend were fired.

26. During an investigation by the State Police upon charges that property was improperly removed from the Worthington police Department, Officer Townsend learned that an upper from a weapon he was issued may have been switched with an upper that was had been placed on the weapon utilized by Officer Rodgers and subsequently turned over to the state police.

27. Chief DeForte had built the upper and subsequently sold it to Officer Rodgers.

28. It was alleged that the weapon that had been assigned to Officer Townsend was "missing"

JURY TRIAL DEMANDED

29. When the state police were advised during this investigation that the weapon they had in their possession may have been tampered with, the "missing" weapon reappeared at the Worthington Borough Police Department.

30. Additionally, on October 30, 2012, Officer Townsend was contacted by the Solicitor of Pine Township where he had also recently been hired along with Chief DeForte and three other officers and advised that Pine Township was disbanding the force.

31. October 31st was going to be the first day with active patrol officers.

32. Officer Townsend learned that on October 30, 2012, Mayor Feeney appeared at Pine Township, went into the police department and, with no authorization from Evan Townsend and removed certain belongings.

33. Mayor Feeney apparently advised both Pine Township and the State Police that there was stolen property that belonged to the Borough of Worthington at the Pine Township Police Department.

### Count I
### Violation of Plaintiff's Right to Procedural Due Process, 42 U.S.C. §1983

34. All prior paragraphs of Plaintiff's second amended complaint are hereby incorporated herein by reference as of the same were more fully set forth at length herein.

35. On or about November 5, 2013, Worthington Borough terminated Officer Townsend without any basis and without being given any reason.

JURY TRIAL DEMANDED

36. To date, Worthington Borough has not informed Officer Townsend why he was discharged.

37. Prior to being terminated, the plaintiff had a constitutionally protected property interest in his job as patrol officer which arose from:

    a. The Pennsylvania Borough Code at 53 §§46171 to 46195 which states that a police officer can only be removed for cause; and/or
    b. The Pennsylvania Whistleblower Law which grants public employees who have made a report of wrongdoing the right to procedural due process before termination.
    c. The Worthington Police Department Policy and Procedure Manual.
    d. Worthington Ordinance setting forth a progressive discipline policy.

38. Under federal and state law, a public employee such as Officer Townsend who has a protected property interest in his job has a right to both a pre-termination hearing ("*Loudermill* hearing") and a post-termination hearing before an impartial tribunal.

39. The Officer Townsend's rights to a *Loudermill* pre-termination hearing and to a post-termination hearing are clearly established rights.

40. Defendants failed to provide any statement of charges to the Plaintiff prior to being terminated from his position.

41. Plaintiff's right to a statement of charges is a clearly established right.

42. Worthington Borough acted under color of state law to deprive Officer Townsend of his constitutionally protected property right without procedural due process of law.

43. As a result of Worthington's unlawful actions, the plaintiff has suffered lost wages and benefits, embarrassment, humiliation, mental anguish, and loss of self-esteem.

WHEREFORE, plaintiff respectfully requests judgment for:

JURY TRIAL DEMANDED

   a. Equitable relief reinstating plaintiff with full back pay and benefits;
   b. Compensation for non-economic damages;
   c. Attorney fees, costs, and expenses;
   d. Punitive damages and,
   e. Other such relief as this court deems appropriate.

### COUNT II – Plaintiff v. All Individual Defendants in their Official and Individual Capacities
### Conspiracy to Violate the Plaintiff's Right to Procedural Due Process/Violation

THIS COUNT HAS BEEN DISMISSED WITH PREJUDICE BY OPINION AND ORDER OF THE COURT DATED DECEMBER 18, 2013.

### COUNT III- Plaintiff v. Worthington Borough
### Pennsylvania Whistleblower Law

44. All prior paragraphs of Plaintiff's second amended complaint are hereby incorporated herein by reference as of the same were more fully set forth at length herein.

45. Plaintiff was an employee of Worthington Borough, which is subject to the Pennsylvania Whistleblower Law.

46. The Pennsylvania Whistleblower Law provides that no employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

47. The Pennsylvania Whistleblower Law further provides that no employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges

JURY TRIAL DEMANDED

of employment because he is requested by an appropriate authority to participate in an investigation, hearing or inquiry held by an appropriate authority or in a court action.

48. As stated below, Officer Townsend was discharged by the defendants in retaliation for making good faith reports of wrongdoing, which in his position as Police Officer and Officer in Charge he was required to do by law.

49. On numerous occasions, Officer Townsend reported to Mayor Feeney and Council Person Rosen the unlawful nature of Worthington's demand for its officers to write sufficient traffic tickets in order to pay for officer salaries, police equipment and vehicles.

50. On one occasion Councilperson Rosen stated to Officer Townsend, "not to be ignorant, but I know who is producing and who isn't and you are not high on the list."

51. In addition, it was Officer Townsend who brought the issue of Mayor Feeney's theft of radios from the fire department to the attention of the Chief of Police.

52. As a result of the defendants' unlawful conduct, the Officer Townsend has suffered the loss of his job and is therefore entitled to reinstatement, back wages, full reinstatement of fringe benefits and seniority rights, actual damages, attorney fees, and costs.

JURY TRIAL DEMANDED

## COUNT IV
## Plaintiff v. Mayor Kevin Feeney in his official and individual capacity

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

53. Officer Townsend hereby incorporates by reference all prior paragraphs of Plaintiff's second amended complaint as if the same were more fully set forth at length herein.

54. On or around September of 2012, Officer Townsend was hired as Sergeant of the Pine Township Police Department and subsequently sworn into office in October of 2012.

55. Officer Townsend's hourly rate with Pine Township was stated to be $15.00 per hour.

56. On or around October 30, 2012 it is believed and therefore averred that Mayor Feeney went to the Township of Pine with the purposeful action intending to cause harm to Officer Townsend's business relations in Pine Township.

57. It is believed and therefore averred that Mayor Feeney made disparaging remarks regarding Officer Townsend.

58. Mayor Feeney had no justification or legal privilege to make these disparaging remarks.

59. It is believed and therefore averred that Feeney's purpose was to further damage Officer Townsend's reputation and cause him to be fired from the Pine Township Police Department.

60. Plaintiff believes and therefore avers that following Mayor Feeney's visit to Pine Township, two police radio's were allegedly found at the Pine Twp. Police Department.

61. Prior to the radio's appearance at the Pine Twp. Department, they were previously in the possession of Mayor Feeney.

62. Supervisor Moore then took the radios to the State Police.

JURY TRIAL DEMANDED

63. Supervisor Moore and Mayor Feeney were in contact via telephone prior to taking the radios to the state police.

64. As a result of Mayor Feeney's remarks, Pine Township met and decided to disband the police force, thereby causing Officer Townsend to lose the income that he would have earned as Sergeant.

65. Officer Townsend believes and therefore avers that Defendants tortuously interfered with his business relations in Pine Township which caused Pine Township to disband its police force.

66. Officer Townsend believes and therefore avers that but for Defendants interference with Pine Township, the police force would not have been disbanded.

67. In addition, Officer Townsend believes and therefore avers that Defendants continue to attempt to interfere with other business relations.

WHEREFORE, plaintiff requests judgment in his favor, plus interest, costs, punitive damages and attorney fees.

Respectfully Submitted

February 18, 2014
_____          _____
Date                              Craig H. Alexander, Esquire
                                  Attorney for Plaintiff

JURY TRIAL DEMANDED