IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM DeFORTE and<br>EVAN TOWNSEND, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | Civil Action No. 2:13-cv-356-MRH |
| v. | )<br>) | Civil Action No. 2:13-cv-357-MRH |
| THE BOROUGH OF WORTHINGTON<br>and KEVIN FEENEY, | )<br>)<br>)<br>) | |
| Defendants. | ) | |

## **OPINION**

**Mark R. Hornak, Chief United States District Judge**

A plaintiff files a lawsuit alleging a federal claim and invoking the court's supplemental jurisdiction on related state claims. The district court later grants the defendant's motion for summary judgment on the plaintiff's federal claim. Because the federal claim is gone, the district court declines to exercise supplemental jurisdiction over the remaining state claims. If the plaintiff successfully appeals the grant of summary judgment on the federal claim, and the appellate court vacates the district court's order, does that vacatur implicitly reinstate the state claims even though they were not explicitly part of the appeal? The answer is "yes." To hold otherwise would clash with the text of the federal supplemental jurisdiction statute, 28 U.S.C. § 1367; frustrate that statute's purpose; and deviate from near uniform interpretations reached by other courts.

Here, as in the scenario above, the Court granted summary judgment for Defendant Borough of Worthington ("the Borough") on William DeForte and Evan Townsend's (collectively, "Plaintiffs") federal claims, and then, under § 1367(c)(3), declined to exercise jurisdiction over Plaintiffs' remaining state law claims—thus dismissing them without prejudice. Plaintiffs

1

expressly appealed the Court's disposal of their federal claims, but only mentioned the state claims in passing in their appellate brief. The Court of Appeals concluded that this Court should not have granted summary judgment on Plaintiffs' federal claims, and therefore vacated the summary judgment order.

Now, having successfully appealed the summary judgment decision on their federal claims, Plaintiffs seek to pursue their previously dismissed state law claims as well. The Borough, on the other hand, asks for a partial judgment on the pleadings against Plaintiffs' state claims—arguing that because Plaintiffs' appeal focused solely on the federal claims, they waived their state claims. What's more, the Borough argues that, because Plaintiffs never filed a protective suit in state court pending the federal appeal, the statute of limitations on their state claims has expired—and asks this Court to say that is the case.

But the Borough is incorrect on both assertions. The Court's dismissal of the state claims resulted entirely from its disposal of the federal claims, so appealing the federal claims decision also appeals the only basis the Court relied on for dismissing the state claims. Thus, vacating the Court's decision on the federal claims implicitly reinstates the state claims. And the Borough's proposed alternative solution—requiring plaintiffs to file separate protective suits in state court—is what the Supreme Court has called an "unattractive option[]." *Jinks v. Richland Cty.*, 538 U.S. 456, 463–64 (2003). For these reasons and those that follow, the Borough's Motions for Partial Judgment on the Pleadings (ECF Nos. 139 and 141) are **DENIED**.

I.  **PROCEDURAL HISTORY**

Plaintiffs held positions with the Borough of Worthington Police Department until their termination on November 5, 2012. They first filed this action against the Borough in 2013. In their Complaint, Plaintiffs brought claims under 42 U.S.C. § 1983 alleging a depravation of their federal

due process rights. They also invoked the Court's supplemental jurisdiction by bringing related state law claims for tortious interference with business relations and alleged violations of a Pennsylvania whistleblower statute.

Plaintiffs' § 1983 claims hinged on whether state law provided them with a property interest in their police positions. The property interest issue presented a question of first impression on the interplay between two (2) Pennsylvania statutes governing police forces. The Borough filed a motion for summary judgment on Plaintiffs' § 1983 claims, arguing that Pennsylvania law did not create a property interest. The Court, noting the novel question of state law, concluded that Plaintiffs did not have a property interest in their positions. As a result, the Court granted the Borough's motion for summary judgment on Plaintiffs' § 1983 claims. Then the Court declined to exercise supplemental jurisdiction over the remaining state law claims. In dismissing the state claims without prejudice, the Court stated that because no extraordinary circumstances existed, Third Circuit case law and § 1367(c)(3) did not support retaining those claims under the Court's supplemental jurisdiction once the federal claims were gone.

Plaintiffs timely appealed the Court's summary judgment decision to the Third Circuit. In their brief, Plaintiffs presented two (2) questions:

> 1. Whether the U.S. District Court erred in dismissing the Plaintiff's case based upon its interpretation of the Pennsylvania Borough Code and the Police Tenure Act as applied to regular part-time police officers, paid an hourly rate, and being employed by a police department consisting of three regular officers and one special detail officer?
>
> 2. Whether the U.S. District Court erred in dismissing the Plaintiff's case based upon its interpretation of the Pennsylvania Borough Code and the Police Tenure Act as it related to when a regular duty part-time police officer has a property interest in his job?

*See* Br. for Appellant, *DeForte v. Borough of Worthington*, No. 17-1923, at 2 (3d Cir. Aug. 27, 2017). The Court of Appeals, noting that the "appeal raise[d] an important and unresolved question concerning the proper interpretation of . . . two Pennsylvania statutes," petitioned the Pennsylvania Supreme Court for certification on the state law issue. *See* Pet. for Certification of Question of State Law, *DeForte v. Borough of Worthington*, No. 17-1923 (3d Cir. Apr. 19, 2018).

The Pennsylvania Supreme Court granted the petition for certification on:

> Whether, under Pennsylvania law, (1) the Pennsylvania Borough Code and the Police Tenure Act must be read in *pari materia*, such that every legally authorized police force in Pennsylvania fall under the governance of one of those two state statutes, and (2) if not, whether the same test should be used to determine whether the Tenure Act's two-officer maximum and the Borough Code's three-officer minimum is satisfied.

*Id.* at 12–13. And, after considering the issue, the Pennsylvania Supreme Court responded:

> In sum . . . and in answer to the two-part question forwarded by the Third Circuit: (1) the civil service protections embodied in the Borough Code and the Tenure Act are broadly in *pari materia* insofar as they are intended to govern all borough police forces; and (2) when calculating the size of a borough police force in any given case the same test should be used. More particularly, the "normal working hours" criterion contained in the Borough Code should be employed to determine how many members a borough police force has for purposes of deciding whether the Tenure Act's two-officer maximum or the Borough Code's three-officer minimum is implicated.

*DeForte v. Borough of Worthington*, 212 A.3d 1018, 1026 (Pa. 2019).

Given the Pennsylvania Supreme Court's answer to the certified questions, the Third Circuit concluded that Plaintiffs "may have a property interest that is sufficient to support their respective procedural due process claims." (ECF No. 110, at 3.) And so the Court of Appeals vacated "the District Court's judgments entered on March 24, 2017," and remanded these cases to this Court for further proceedings. (*Id.*)

4

Now, on remand, Plaintiffs reassert their previously dismissed state law tortious interference and whistleblower claims alongside their § 1983 claims. In response, the Borough moves for a partial judgment on the pleadings on Plaintiffs' state law claims. (ECF Nos. 139 and 141.)[1] The parties fully briefed the motions. (ECF Nos. 140; 142; 144; 146; 149; and 150.)

The Court noted tension between the parties' briefs and a post-remand joint status report they previously filed. In that joint status report, the parties stated "[t]he only remaining counts of the Second Amended Complaint before the court are Counts I and III." (ECF No. 112.) But in their briefs for the instant motions, the Borough argued that only Count I should remain (thus different from the status report as to Count III), while Plaintiffs argued Counts I, III, and IV remain (thus different from the status report as to Count IV). To resolve this apparent tension, the Court ordered that the parties file a joint status report confirming their respective positions on which claims should remain in this case following the Court's decision on the Borough's motions. (ECF No. 152.) The Borough confirmed its position that only Count I, the due process claim, should remain. (*Id.*) Plaintiffs confirmed their position that Counts I, III, and IV should remain—Count III being the state whistleblower claim against the Borough and Count IV being the tortious interference claim against Defendant Kevin Feeney.[2] (*Id.*) With that, the Borough's motions are ripe for disposition.

---

[1] Plaintiffs DeForte and Townsend filed separate cases raising substantially the same issues. For efficiency the Court consolidated the cases. (ECF No. 20.) The Borough filed a separate motion for partial judgment on the pleadings for each plaintiff. Because the motions are the same, except for immaterial differences in the statement of facts, the Court can address the Borough's motions as if they were a single motion.

[2] Defendant Feeney, who Plaintiffs sued in his capacity as mayor of the Borough of Worthington and his individual capacity, is represented by the same attorneys as the Borough. In the Borough's motions, counsel noted their concurrent representation of Feeney. (ECF Nos. 140, at 8; 149, at 3.) Because the Borough's motions relate to Count IV, which is only against Feeney, if the Court denies the Borough's motion, Feeney remains a defendant in this case.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed but within such time as to not delay the trial. *See* Fed. R. Civ. P. 12(c). Under Rule 12(c), judgment on the pleadings may be granted "only if, viewing all the facts in the light most favorable to the nonmoving party, no material issue of fact remains and the moving party is entitled to judgment as a matter of law." *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 257 (3d Cir. 2012) (citing *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)). "A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010) (citing *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991)). And when the Court considers a motion for judgment on the pleadings, it "must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." *Zimmerman v. Corbett*, 873 F.3d 414, 417–18 (3d Cir. 2017).

## III. DISCUSSION

The Borough's Motions for Partial Judgment on the Pleadings (ECF Nos. 139 and 141) raise two (2) arguments. The first is that the statute of limitations has expired on Plaintiffs' state law claims during Plaintiffs' appeal to the Third Circuit. The second is that Plaintiffs waived their state law claims by failing to appeal the Court's order declining to exercise supplemental jurisdiction over the state claims. Neither argument is persuasive.

### A. Statute of Limitations and 28 U.S.C. § 1367(d)

In 1990, Congress enacted the supplemental jurisdiction statute, 28 U.S.C. § 1367—largely codifying the judicially created doctrines of pendent and ancillary jurisdiction. 13D Charles Alan

Wright & Arthur R. Miller, *Federal Practice & Procedure Jurisdiction* § 3567 (3d ed. 2020). Subject to certain exceptions, § 1367(a) provides district courts with supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Thus, when a plaintiff brings a federal claim—for which 28 U.S.C. § 1331 provides original jurisdiction—the plaintiff can bring related state claims under § 1367(a).

Section 1367 also contemplates the scenario in which a plaintiff brings related federal and state claims, but the district court dismisses the federal claims early in the lawsuit, leaving only the state claims. In that situation, "[t]he district court[] may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). Though § 1367(c) generally provides some discretion, when the federal claim drops out before trial, our Court of Appeals has held that the district court *must* decline to exercise jurisdiction over the remaining state claims absent extraordinary circumstances. *See Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).

But what if, while the federal suit was pending, the statute of limitations ran on the state claims? In that scenario, if the federal court exercised its discretion to decline supplemental jurisdiction under § 1367(c)(3), the dismissal without prejudice would effectively be a dismissal with prejudice. *See Artis v. District of Columbia*, 138 S. Ct. 594, 599 (2018). To prevent this harsh consequence, Congress provided a tolling mechanism in § 1367(d). Section 1367(d)'s tolling clause provides:

> The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily

7

>dismissed at the same time as or after the dismissal of the claim under subsection (a), *shall be tolled while the claim is pending* and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

28 U.S.C. § 1367(d) (emphasis added). As the Supreme Court has held, § 1367(d)'s use of the word "tolled" means "to hold it in abeyance, *i.e.*, to stop the clock." *Artis*, 138 S. Ct. at 598. So, for however long that claim is "pending," the clock on the statute of limitations remains stopped.

Interpreting the impact of § 1367(d) on the running of state statutes of limitations is a task properly left to state courts—since the tolling provision applies to supplemental state law claims that are refiled in state court after being dismissed by the federal court. With uniformity, state courts have held that a state law claim remains "pending" throughout the plaintiff's federal appeal.[3] In one example of these cases, Maryland's high court parsed the text and history of § 1367(d) to hold that the state claim is "pending," and the clock therefore remains stopped, until "(1) a final judgment is entered by the . . . District Court dismissing the pendant State-law claims, or (2) if an appeal is noted from that judgment, issuance of an order of the . . . Court of Appeals dismissing the appeal or a mandate affirming the dismissal of those claims by the District Court." *Turner v. Kight*, 957 A.2d 984, 996–97 (Md. 2008).

Taking that uniform position as correct, so long as the plaintiff's federal appeal does not end in an affirmance, the claim remains pending and there is no need to refile the claim in state court. This interpretation of § 1367(d) makes good sense. To read § 1367(d) to "restart the clock" the moment the district court dismisses the state claim, even when the plaintiff seeks review as a

---

[3] *See Okoro v. City of Oakland*, 48 Cal. Rptr. 3d 260, 264 (Cal. Ct. App. 2006) (citing *Kendrick v. City of Eureka*, 98 Cal. Rptr. 2d 153, 157 (Cal. Ct. App. 2000)); *Berke v. Buckley Broad. Corp.*, 821 A.2d 118, 124 (N.J. Super. Ct. App. Div. 2003); *Harter v. Vernon*, 532 S.E.2d 836, 839 (N.C. Ct. App. 2000), *abrogated on other grounds by Artis*, 138 S. Ct. at 598; *Fennell v. Stephenson*, 528 S.E.2d 911, 914 (N.C. Ct. App. 2000), *rev'd in part on other grounds*, 554 S.E.2d 629, 634 (N.C. 2001); *Huang v. Ziko*, 511 S.E.2d 305, 308 (N.C. Ct. App. 1999), *abrogated on other grounds by Artis*, 138 S. Ct. at 598; *Lucas v. Muro Pharm. Inc.*, No. 944052, 1994 WL 878820, at *2–3 (Mass. Super. Dec. 2, 1994).

right by the court of appeals, would cause at least two (2) unseemly results. First, it would require plaintiffs to file so-called "protective suits" in state court then seek to stay that separate suit while the federal appeal is on-going. In *Jinks v. Richland County*, the Supreme Court called the use of "protective suits" an "unattractive option[]." 538 U.S. at 463–64. That is because a main point, if not *the* main point, behind Congress' decision to enact the supplemental jurisdiction statute was to promote judicial economy by litigating related federal and state claims in a single case. *See id.* at 462–63. So requiring plaintiffs to file protective suits during a federal appeal would significantly frustrate § 1367's purpose. This is especially true since protective suits provide no guarantee of success in the task of avoiding duplicative litigation. After all, the state judge can always deny the request for a stay pending the federal appeal.

Second, reading § 1367(d) to restart the clock on the state claims even while the federal appeal is still pending could discourage plaintiffs from filing a federal appeal—an appeal plaintiffs have a right to take. If plaintiffs risk losing their state claim—which in some cases may be more valuable than their federal claim—they will be less inclined to exercise their right to federal review. In *Jinks*, the Supreme Court spurned an interpretation of § 1367(d) that would cause plaintiffs to abandon their right to a federal forum. *See* 538 U.S. at 463 ("[Section 1367] eliminates a serious impediment to access to the federal courts on the part of plaintiffs pursuing federal and state-law claims."). The same logic and concerns should apply to a plaintiff's right to a federal appeal.

Here, the Borough's first argument is that the statute of limitations on Plaintiffs' state claims expired because they failed to refile those claims in state court following this Court's 2017 Order dismissing them without prejudice. (ECF No. 140, at 6.) While acknowledging that Plaintiffs' state claims were tolled during the earlier district court litigation, as the Borough reads § 1367(d), the clock started to run again on Plaintiffs' state claims the moment this Court entered

its dismissal order. (*Id.*) As the Borough puts it, "[d]ismissal occurred in March of 2017. [Plaintiffs] could have filed the state law claims and then sought a stay of proceedings pending the federal appeal—if [they] so wished, but failed to do so." (*Id.* at 7.)

The Borough coats its argument in a thin layer of textualism. In its brief, the Borough homes in on § 1367(d)'s use of the word "dismissed" as the event that restarts the clock. That use of "dismissed" leads to an obvious interpretation, says the Borough. For starters, as others have observed, § 1367's text does not always lend itself to a clear interpretation. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 579 (2005) (Ginsburg, J., dissenting) ("[Section 1367] is hardly a model of the careful drafter's art."). But the Borough's laser focus on the term "dismissed" ignores other interpretive clues sprinkled in the statute's text. For instance, the Borough does not reconcile the fact that § 1367(a), (b), and (c) all reference "the district courts," while § 1367(d) makes no such limiting reference.

Even more important, the Borough ignores § 1367(d)'s use of the term "pending." Since § 1367(d) provides that the statute of limitations on the state claims "shall be tolled while the claim is pending," surely that term matters to the Borough's argument. But does "pending" mean "pending in the district court?" Or does it mean "pending in any federal court?" State courts that have addressed the issue hold that "pending" encompasses a plaintiff's federal appeal. *See, e.g.*, *Turner*, 957 A.2d at 996–97. While it does not appear that Pennsylvania's state courts have interpreted the term "pending," as it is used in § 1367(d), there is no reason to think they would diverge from the uniform interpretation reached by their sister courts when they would be called to do so. *Accord Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1217 (10th Cir. 2014) ("State courts have apparently agreed that tolling under § 1367(d) continues until any federal appeal is complete. We are confident that the New Mexico courts would follow suit.") (citations omitted).

10

While the Borough's argument appears to conflict with § 1367's text, it surely conflicts with the statute's purpose. The Borough's reading of § 1367(d) would require the sort of "unattractive" protective suits that the Supreme Court rejected long-ago. *See Jinks*, 538 U.S. at 463–64. And as the Court already noted, that reading would waste judicial resources, rely on little more than finger-crossing that the state judge agrees to a stay, and would discourage perhaps meritorious federal appeals. In a case like this one when the Court of Appeals vacates the District Court's order, the Borough's proposal is even more counterproductive. If plaintiffs are required to file a protective suit pending the appeal, the plaintiffs either lose out on their opportunity to bring their state claims alongside their federal claims or they risk the unfortunate and, as will be seen, unnecessary scenario of bringing their state claims in two (2) forums.

Thus, informed by the remarkable consistency in state court interpretations of § 1367(d), the Court concludes that Plaintiffs' state claims remained "pending" throughout their appeal to the Third Circuit. So the clock remained stopped throughout that appeal. And it remains stopped now following the Third Circuit's remand order—leaving Plaintiffs with all of the time left on the statute of limitations that they had when they first filed this action.

## B. <u>Reinstatement of Plaintiffs' State Claims</u>

The Borough's second argument, that Plaintiffs failed to appeal the dismissal of their state law claims, thus waiving those claims now, also suffers from a fatal flaw. The Third Circuit has "held on numerous occasions that '[a]n issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before [the appellate] court.'" *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 202–03 (3d Cir. 2004) (first alteration in original) (quoting *Laborers' Int'l Union v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)). This rule gives all parties a fair opportunity to contest the relevant

issues before the appellate court. *See id.* at 203–04. And, as a result, the Third Circuit has "consistently rejected such attempts to litigate on remand issues that were not raised in a party's prior appeal and that were not explicitly *or implicitly* remanded for further proceedings." *Id.* at 203 (emphasis added).

Here, it is important to identify why the Court declined supplemental jurisdiction over Plaintiffs' state claims following the disposal of their federal claims. In its Opinion, the Court made clear that the *only* reason it was dismissing the state claims without prejudice was because it granted summary judgment for the Borough on Plaintiffs' federal claims. (ECF No. 104, at 23.) The Court cited § 1367(c)(3) and noted that no extraordinary circumstances supported retaining the supplemental state law claims once the federal claims dropped out of the action. (*Id.*) Thus, the Court's Opinion should be fairly read to confirm that, had the federal claims survived, the state claims would have too.

Following the grant of summary judgment on the federal claims and dismissal of the state claims, Plaintiffs appealed to the Third Circuit. (ECF No. 106.) As noted above, Plaintiffs' opening brief to the Third Circuit posed two (2) questions:

> 1. Whether the U.S. District Court erred in dismissing the Plaintiff's case based upon its interpretation of the Pennsylvania Borough Code and the Police Tenure Act as applied to regular part-time police officers, paid an hourly rate, and being employed by a police department consisting of three regular officers and one special detail officer?
>
> 2. Whether the U.S. District Court erred in dismissing the Plaintiff's case based upon its interpretation of the Pennsylvania Borough Code and the Police Tenure Act as it related to when a regular duty part-time police officer has a property interest in his job?

*See* Br. for Appellant, *DeForte v. Borough of Worthington*, No. 17-1923, at 2 (3d Cir. Aug. 27, 2017). While the questions presented asked about the district court's decision to dismiss "the

Plaintiff's case," the substance of the brief centered on the merits of granting summary judgment on Plaintiffs' § 1983 claims. *See id.* at 6–12. So the focus at the Court of Appeals was mostly on the summary judgment decision on the federal claims.

Now, on remand, the Borough argues that "[Plaintiffs] did not raise on appeal the issue of whether the trial court should have retained jurisdiction of the state law claims, despite the trial court having opined on the issue." (ECF No. 140, at 8.) But that is not the argument Plaintiffs are making here. It is one thing to ask whether the district court should have exercised its discretion to retain the state claims despite dismissing the original jurisdiction providing federal claims. It is entirely another to ask whether the district court should have even dismissed the federal claims in the first place, thus triggering the discretion to dismiss the state claims under § 1367(c)(3). The Borough's argument ponders the former, while Plaintiffs' the latter.

While their briefs could be clearer,[4] Plaintiffs' basic argument is that when the Third Circuit vacated the Court's disposal of their federal claims, the Court of Appeals implicitly reinstated their state claims. That argument rests on sound logic: if the district court dismissed the state claims only because it disposed of the federal claims, and the Court of Appeals vacated the decision on the federal claims, then the sole basis for dismissing the state claims has evaporated.

Plaintiffs' notion that resurrecting the federal claim should reinstate the supplemental state claims is not a novel concept. *See* Wright & Miller, *supra*, § 3567.3. Our Court of Appeals has, in the past, expressly reinstated supplemental state claims when reversing a district court's disposal of related federal claims. *See Shaev v. Saper*, 320 F.3d 373, 384 (3d Cir. 2003). Courts in several other circuits have concluded that reinstating a federal claim also reinstates state claims dismissed pursuant to § 1367(c)(3). *See Spinelli v. City of New York*, 579 F.3d 160, 175 (2d Cir. 2009)

---

[4] Plaintiffs spend considerable time in their briefs discussing the collateral order doctrine. But because this case involved an appeal from a final order, the collateral order doctrine is irrelevant to the issues presented here.

13

("Reversal of [plaintiff's] due process claim also reinstates the district court's supplemental jurisdiction over her state law claim."); *Eliserio v. United Steelworkers of Am. Local 310*, 398 F.3d 1071, 1080 (8th Cir. 2005); *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 79 (2d Cir. 2003) ("Because the FLSA claims are now reinstated, 28 U.S.C. § 1367(c)(3) no longer provides a basis for declining to exercise jurisdiction over the [state law] claim."). And state courts have recognized the same. *See, e.g.*, *Turner*, 957 A.2d at 995 ("As in this case, if the court has dismissed the State-law claims only because it dismissed all of the Federal claims, the appeal is likely to be focused on the dismissal of the Federal claims. The State-law claims remain very much in play, however, for, if the dismissal of the Federal claims is reversed, the District Court's supplemental jurisdiction over those pendent claims will remain and likely will be exercised.").

What's more, Plaintiffs' argument simply makes logical sense. Think of an original federal jurisdiction claim as a laptop and a supplemental state claim as a wireless mouse. You can use the laptop without the mouse; but the mouse is only of use so long as the laptop is up-and-running. On the other hand, if the laptop breaks, it does not mean there is necessarily anything wrong with the mouse itself—just that the mouse cannot fulfil its purpose sans laptop. So when you take the laptop to the shop to get fixed, you do not need to bring along the mouse. And when the technician fixes the laptop, the mouse becomes functional again without anyone ever tinkering with it. Fixing one is fixing both. And when the technician says: "enjoy your fixed-up laptop," it is implicit that you can enjoy it alongside your once again functional wireless mouse.

The bottom line is that even though the parties' arguments to the Third Circuit revolved around the summary judgment decision on the federal claims, nothing needed to be said in that Court about the state claims. And this should come as no surprise, since as noted above, under prevailing Circuit law, this Court had no discretion but to dismiss the state law claims without

14

prejudice once summary judgment was granted on the federal claims. The effect of vacating the summary judgment decision entirely undercut the basis for dismissing the state claims. So when the Third Circuit stated in its Mandate: "we hereby vacate the District Court's judgments entered on March 24, 2017, and remand for further proceedings," it should be read to implicitly reinstate the state claims.[5] And concluding that the Court of Appeals implicitly reinstated the state claims accords with the rationale behind waiver doctrine. The parties had a chance to brief the issue of summary judgment on the federal claims, which was the dispositive issue in this Court's decision to dismiss the state claims. So no one was short-changed in making their case. And our Court of Appeals has acknowledged that issues can be "implicitly remanded for further proceedings."[6] *See Skretvedt*, 372 F.3d at 203.

In the end, the Borough's second argument fares no better than its first. Plaintiffs did not waive their state claims on appeal. To the contrary, they appealed the only issue that mattered in the Court's decision to dismiss the state claims: the decision to dispose of the federal claims. As a result, the Court will deny the Borough's Motion for Partial Judgment on the Pleadings.

### IV. CONCLUSION

When the Court dismissed Plaintiffs' state claims without prejudice those claims remained "pending" throughout Plaintiffs' federal appeal. As a result, the statute of limitations on those

---

[5] There is a non-frivolous argument that the Mandate explicitly reinstated the state claims since it uses "judgments" to refer to the object of the Third Circuit's vacatur. "Judgments" could be read to include not only the summary judgment on each of Plaintiffs' respective federal claims, but also the Order dismissing their state claims. Yet it is also fair to read the Third Circuit's Mandate as only explicitly referencing the summary judgment decision, since elsewhere in the Order the Court of Appeals discusses the federal due process claims but never mentions the state claims. Yet whether the Third Circuit's Mandate explicitly refers to Plaintiffs' state claims is immaterial, because the Court concludes that the Mandate, at the very least, implicitly reinstates the previously dismissed state claims.

[6] The parties have not identified, and the Court's research has not uncovered, a case in which a court in our Circuit concluded that an issue had been implicitly remanded for further proceedings. But in the Court's estimation, there is no better example of an issue that can be implicitly remanded than the one presented in this case. That is because the state claims, as the Court has explained, live and die by the decision on the federal claims. *See* 28 U.S.C. § 1367(c)(3).

claims remained tolled. And although the state claims did not play a prominent role in the federal appeal, the Third Circuit's order vacating summary judgment on Plaintiffs' federal claims implicitly reinstated their state claims—since this Court's decision to dismiss the state claims relied solely on the fact that it granted summary judgment on their federal claims. For these reasons, the Borough's Motions for Partial Judgment on the Pleadings (ECF Nos. 139 and 141) are **DENIED**. As a result, Counts I, III, and IV remain in this case.

/s/ Mark R. Hornak<br>
Mark R. Hornak<br>
Chief United States District Judge

Dated: May 14, 2020
cc:     All counsel of record